http://www.va.gov/vetapp16/Files3/1626401.txt

Citation Nr: 1626401 
Decision Date: 06/30/16 Archive Date: 07/11/16

DOCKET NO. 09-27 009 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Boston, Massachusetts

THE ISSUE

Entitlement to recognition as the surviving spouse of the Veteran, for VA purposes.

REPRESENTATION

Appellant represented by: S. James Boumil, Attorney

Appellee represented by: North Carolina Division of Veterans Affairs

WITNESS AT HEARING ON APPEAL

Appellant

ATTORNEY FOR THE BOARD

K. Hudson, Counsel

INTRODUCTION

The Veteran served on active duty from May 1971 to May 1973. He died in June 2007.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a regional office (RO) administrative decision of May 2008 that determined that the Appellee (K) was the surviving spouse of the Veteran. The Appellant (F) appealed, claiming that she is the surviving spouse. In April 2011, the Appellant appeared at a Board hearing held at the RO before a Veterans Law Judge who is no longer with the Board. She did not respond to a notice from VA to respond if she wished to have a new hearing, and, therefore, an additional hearing is not warranted. 

The case was remanded in June 2011 for compliance with simultaneously contested claim procedures. See 38 C.F.R. § 20.3(p) (2014) (The term "[s]imultaneously contested claim refers to the situation in which the allowance of one claim results in the disallowance of another claim involving the same benefit or the allowance of one claim results in the payment of a lesser benefit to another claimant."). The Appellant claims recognition as the surviving spouse of the Veteran, while the Appellee is currently in receipt of VA DIC benefits as the surviving spouse of the Veteran. 

The appeal is REMANDED to the Agency of Original Jurisdiction (AOJ). VA will notify the appellant if further action is required.

REMAND

The Veteran died in June 2007, and both the Appellant and the Appellee claim entitlement to VA Dependency and Indemnity Compensation (DIC) benefits as the surviving spouse of the Veteran. See 38 U.S.C.A. § 1310 (West 2014). In an administrative decision dated in May 2008, the Appellee was found to be entitled to DIC benefits as the surviving spouse. The Appellant appealed that decision. 

The Veteran married his first wife in September 1971. In October 2002, he married the Appellant, F. In September 2003, he and his first wife were divorced. In September 2005, he married the Appellee, K. The RO found that because the Veteran was still married to his first wife at the time he married F, that marriage was not valid, and DIC benefits were awarded to K. 

The term "surviving spouse" means a person who was the spouse of a veteran at the time of the veteran's death, and who lived with the veteran continuously from the date of marriage to the date of the veteran's death (except where there was a separation which was due to the misconduct of, or procured by, the veteran without the fault of the spouse). 38 U.S.C.A. § 101(3) (West 2014); 38 C.F.R. § 3.50 (2015). A spouse of a veteran is a person whose marriage to the veteran is valid according to the law of the place where the parties resided at the time of the marriage or the law of the place where the parties resided when the right to benefits accrued. 38 U.S.C.A. § 103(c) (West 2014); 38 C.F.R. § 3.1(j) (2015). Thus, a surviving spouse must have a valid marriage to the veteran, and there must be continuous cohabitation. 

Absent a valid marriage, under certain circumstances, there may be a "deemed valid" marriage. An attempted marriage will be "deemed valid" if: (a) the attempted marriage occurred one year or more before the veteran died, or any length of time if there were children born to the marriage; and (b) the claimant entered into the marriage without knowledge of the impediment; and (c) the claimant cohabited with the veteran continuously from the date of the attempted marriage until his death; and (d) no other claimant has been found to be entitled to gratuitous VA death benefits. 38 U.S.C.A. § 103(a); 38 C.F.R. § 3.52. 

Here, although another claimant, K, has been found entitled to VA death benefits, the decision so finding is on appeal. The Appellant has credibly affirmed that she was unaware of the impediment to her marriage to the Veteran, i.e., his prior marriage. 

Thus, the issue in this case turns on the element of "continuous cohabitation, which is a requirement for both a valid marriage, and a deemed valid marriage. "Continuous cohabitation" means that the claimant must have lived with the veteran continuously from the date of marriage to the date of the Veteran's death, except where there was a separation which was due to the misconduct of, or procured by, the Veteran without the fault of the spouse. 38 U.S.C.A. § 101(3) (West 2014); 38 C.F.R. §§ 3.50, 3.53 (2015). Temporary separations which ordinarily occur, including those caused for the time being through fault of either party, will not break the continuity of the cohabitation. Id. 

In this case, there is evidence that tends to contradict both parties' claims of continuous cohabitation. Although the Veteran married F in October 2002, he did not mention this to VA, including in VA treatment records. In an Eligibility Verification Report (EVR) dated September 9, 2003, the Veteran described himself as not married. On a VA examination in March 2004, the Veteran reported that he had been married in 1973, and divorced approximately 2 years earlier. He said that he lived with his sisters in Worcester. In July 2004, on a VA examination, he said he had a fiancée in Maryland; he was currently living in Massachusetts. In other hospital records, he said his fiancée lived in Maryland, and he continued to live alone in Worcester. A marriage certificate shows that he married K on September 28, 2005, in North Carolina. During a hospitalization from October 2005 to November 2005, the Veteran said that he planned on moving to North Carolina after discharge. In a November 2005 status of dependents report, he claimed K as a dependent. 

According to a June 2006 VA examination report, the Veteran stated that his second marriage had broken up, and that his wife lived out of state. However, K states, in a "Timeline" received in February 2008, that she visited the Veteran in Worcester in July 2006; that he returned to Maryland with her; and that he came to pick her up in Maryland in November 2006, at which time they lived in the Veteran's apartment in Worcester for a couple of months until she was forced to leave because of lease restrictions. She states that she and the Veteran concluded in February 2007 that she should move back to Maryland, and that he spent many weeks in Maryland with her. 

An April 2007 VA examination report reveals that the Veteran was diagnosed with lung cancer in October 2006. From that point until March 5, 2007, he was more or less continuously undergoing chemotherapy, radiation therapy, and/or surgery for stage III metastatic lung cancer. This tends to contradict K's statement that he came to pick her up in Maryland in November 2006, and her omission of any mention of his undergoing this debilitating treatment regimen during the time when she states they were living together in Massachusetts is curious. 

The VA examination, on April 24, 2007, also notes that chemotherapy was scheduled to resume the following week. At the time of the examination, he Veteran was noted to have multiple symptoms, including chest pain, requiring narcotics to control, episodic dyspnea, and severe and disabling fatigue, which he stated prevented him from undertaking activities beyond self-care and attending medical visits. This also does not appear consistent with K's claim that she, the Veteran and his sister drove to North Carolina in April 2007, where they house-hunted. 

However, K also states that while in North Carolina, in May 2007, the Veteran became ill and had to be rushed to a hospital. Since this would corroborate her statement, records of this hospital visit should be obtained. In addition, she states that during his return to Worcester, the Veteran was readmitted to the hospital, and that she visited him, accompanied by other relatives. 

The Appellant, F, states that the Veteran was treated at the UMASS HealthCare Center in Worcester from April to June, 2007, and that was the reason he was staying in Worcester during that time. 

As an added complication, although K states that the Veteran's sister, M, accompanied her and the Veteran to North Carolina during the house-hunting trip, M herself stated, in an affidavit dated in November 2007, that the Veteran stayed in Worcester to be close to treatment while his wife, F, was working. She said that she helped care for the Veteran during his cancer treatment. She identified F as the Veteran's wife. F was also the informant on the death certificate, and listed as his wife in a funeral program; the burial took place in North Carolina. 

In short, the evidence currently of record does not establish that K cohabited with the Veteran at any point during their marriage, let alone after June 2006, when the Veteran described the marriage as having ended. This opens the door to the possibility of F establishing status as the surviving spouse on the basis of a deemed valid marriage. However, there is evidence against this conclusion, including the Veteran's failure to identify her as his wife on any of the currently available VA records, as well as their separate addresses. Contrary to F's statements, the Veteran's address for VA purposes was in Worcester throughout the time of their purported marriage. 

There is also a question as to F's continuous cohabitation with the Veteran. The Appellant, F, states that the Veteran lived with her until he became ill with cancer, at which time he lived in Worcester to be close to his treatment. The Veteran received mail at a Worcester address throughout the time of his purported marriage to F, and, as noted above, did not identify F as his wife on any VA record currently on file. Nevertheless, the Board observes that on several occasions, the Veteran stated that he received his mental and primary health care in Lowell, which is where F states that she lived with the Veteran. Given that there are VA outpatient clinics and Vet Centers in both Lowell and Worcester, the fact that the Veteran apparently traveled approximately 45 miles each way for treatment, when it was available locally, warrants further investigation. 

Additionally, according to a June 2006 VA examination report, the Veteran said that he had been going to the Lowell clinic, but wanted to transfer his care to Worcester, which was closer to his home, raising the possibility of a separation from F, even if they previously cohabited. 

However, there is a wealth of potentially relevant evidence which has not been obtained, namely, the Veteran's medical treatment records, since personal information is often provided in connection with medical treatment. The only VA medical records on file consist of hospitalization records and VA examination reports from Northampton and Boston VA facilities. VA medical records have not been requested from either the Lowell or Worcester VA facilities. 

In addition, records of the Veteran's treatment at the University of Massachusetts Memorial Health Care Medical Center, University Campus, in Worcester, including the terminal hospitalization, should be obtained. K stated, in February 2008, that the question of the Veteran's spouse had arisen in connection with his terminal hospitalization. At that time, she had been told by the hospital's Patient's Advocate that that "a woman from Africa had paid [the Veteran] to marry her so that she could remain in the country and receive citizenship." She stated that upon receiving both her and F's marriage certificates, "it was obvious that there was an issue," although she did not indicate how this was resolved at the hospital. Finally, records of the Veteran's purported hospital visit in North Carolina in May 2007 would be pertinent. 

Accordingly, the case is REMANDED for the following action:

1. Obtain all of the Veteran's VA treatment records dated from October 2002 to June 2008 from the following VA facilities, to also include any administrative records which contain the Veteran's address or marital status:

* VA Outpatient Clinic, Lowell, MA;
* Vet Center, Lowell, MA;
* VA Outpatient Clinic, Worcester, MA;
* Vet Center, Worcester, MA.

All records obtained, as well as any negative responses, must be associated with the Veteran's VBMS electronic file. 

2. Obtain all of the Veteran's records from the University of Massachusetts Memorial Health Care Medical Center, University Campus, in Worcester, MA, from September 2006 to June 2007. Explain that the evidence sought pertains to his marital status, and any records that would be potentially relevant to his marital status and address, such as visits from relatives, next-of-kin reports, patient's advocate reports, his method of transportation to and from the facility, and who accompanied him, and progress notes discussing plans for aftercare, should be provided. Records of a solely medical nature, such as imaging studies, laboratory reports, etc., need not be provided. If authorization is needed, as a starting point, the Appellant, F, should be contacted, as the evidence indicates that she was the Administratrix of his estate, and considered to be the Veteran's wife by Massachusetts. Any negative response, or the requested records, must be associated with the claims file. 

3. Contact the Appellee, K, and ask her to identify the hospital where the Veteran was treated in North Carolina in approximately May 2007. She should also be asked to authorize the release of such records. Obtain any records adequately identified. Any negative response, or the requested records, must be associated with the claims file. 

4. Then, review the Appellant's claim for status as the surviving spouse of the Veteran, on the basis of a deemed valid marriage. To this end, first, the AOJ must address whether the Appellee, K, who is currently recognized as the surviving spouse, "continuously cohabited" with the Veteran, as that term is defined by VA law and regulations. If not, the matter of a deemed valid marriage with the Appellant remains, and the question of whether the Appellant "continuously cohabited" with the Veteran must addressed. 

5. Since the decision cannot be favorable to both parties, after adjudicating the claim, a supplemental statement of the case must be prepared. Procedures regarding contested claims must be followed in all adjudications and notifications, including the SSOC. Then, the case must be returned to the Board for appellate consideration.

The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).

_________________________________________________
MICHAEL A. HERMAN
Veterans Law Judge, Board of Veterans' Appeals

Under 38 U.S.C.A. § 7252 (West 2014), only a decision of the Board of Veterans' Appeals is appealable to the United States Court of Appeals for Veterans Claims. This remand is in the nature of a preliminary order and does not constitute a decision of the Board on the merits of your appeal. 38 C.F.R. § 20.1100(b) (2015).